IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **In re: Subpoena To Coinbase Global Inc. for Documents Relating to the Coinbase Account of Eric Emer** ) ) ) ) ----------------------------------------------- ) ERIC EMER, ) ) Plaintiff, ) ) v. ) ) COMMODITIES FUTURES TRADING COMMISSION, ) ) ) Defendant. ) ) | **Case No:** 1:22-CV-06570 Hon. John F. Kness |

**REPLY IN SUPPORT OF ERIC EMER'S MOTION TO QUASH
<u>SUBPOENA ISSUED TO COINBASE GLOBAL, INC.</u>**

**I.     INTRODUCTION**

In concession that it has no reasonable basis for seeking to delve into plaintiff Eric Emer's ("Mr. Emer" or "Movant") private financial information dating back to 2013 – at which time Mr. Emer was merely a college student who had no affiliation whatsoever with Three Arrows Capital ("3AC") – the CFTC does not oppose Mr. Emer's request that the underlying administrative subpoena to Coinbase be limited in scope: (a) to a period of time on or after January 1, 2020; and (b) to materials reasonably pertinent to the CFTC's investigation. The CFTC's failure to address this manifestly reasonable request in its Opposition should result in the motion being granted under Federal Rules of Civil Procedure 45 and/or 26, which are independent bases unrelated to the RFPA upon which Mr. Emer's Motion was based but which the CFTC did not address in its Opposition.

Rather, the CFTC concentrated the entirety of its Opposition on arguing that it supposedly was not required to provide notice of the underlying subpoena and an opportunity to object to Mr. Emer because Coinbase purportedly does not qualify as a "financial institution" within the meaning of the RFPA. The CFTC is wrong for myriad reasons and its reliance on a misguided interpretation of the RFPA and misleading recitation of Coinbase's underlying business offerings is unavailing in demonstrating that Coinbase does not qualify as a "financial institution." As such, and the subpoena should be quashed in its entirety due to the CFTC's failure to abide by the basic procedural requirements of the RFPA, which exist in order to provide "customers of financial institutions [with] notice of any government request for their financial records and an opportunity to challenge the request." *Hunt v. U. S. Sec. & Exch. Comm'n*, 520 F. Supp. 580, 602 (N.D. Tex. 1981).

## II. ARGUMENT

### A. The CFTC Does Not Oppose Mr. Emer's Request To Reasonably Limit The Scope Of The Administrative Subpoena To Relevant Matters

Contrary to the CFTC's boldfaced claim that "Emer has not cited any additional bases beyond the RFPA to challenge the scope of any investigate subpoena" (Opp. at 5), Mr. Emer expressly moved under Federal Rules of Civil Procedure 45(d)(3)(A) and 26(c) to quash or limit the scope of the CFTC's subpoena. *See* Mot. at 1 (citing Fed. R. Civ. P. 45(d)(3)(A) and Fed. R. Civ. P. 26(c) as bases for Motion); *see also id*. 7-8 (requesting issuance of a protective order to limit scope of the administrative subpoena).

Federal Rule of Civil Procedure 54(d)(3)(A) provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 54(d)(3)(A). Further, Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending" and that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [by] . . . forbidding the disclosure or discovery; specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; prescribing a discovery method other than the one selected by the party seeking discovery; [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c). As such, both of these rules provide procedural mechanisms for Mr. Emer to obtain relief from the administrative subpoena independently of the RFPA, were expressly cited in the Motion but were unaddressed by the CFTC in Opposition.

2

As discussed in the motion, the administrative subpoena should be limited because it is entirely unclear why Mr. Emer's financial information pre-dating August 2019, when he first joined 3AC, or records from Coinbase reflecting purely personal transactions by him unrelated to 3AC after August 2019 are relevant to any CFTC investigation. The CFTC offers no such explanation in its Opposition, and rather appears to tacitly concede that Coinbase's proposed compromise offer to limit its response to information after January 2019 (which would still be overbroad) was reasonable. *See* Opp. at 4. The CFTC's failure to even attempt to justify the overbroad scope of the administrative subpoena justifies the reasonable modifications Mr. Emer has requested, pursuant either to Fed. R. Civ. P. 45(d)(3)(A) or Fed. R. Civ. P. 26(c), to ensure that only material relevant to the investigation is divulged.[1]

### B. The CFTC's Contention That Coinbase Does Not Qualify As A "Financial Institution" Fails

The CFTC does not dispute that it failed to abide the notice requirements prescribed by the RFPA in issuing its administrative subpoena to Coinbase, nor does it dispute that the information sought implicates Mr. Emer's personal financial information. Rather, the CFTC contends that it was not required to abide by the RFPA because Coinbase purportedly does not qualify as a "financial institution" within the meaning of the RFPA. The CFTC's argument is principally based on the fact that the majority of Coinbase's business activities and revenues are generated by services unrelated to its borrowing, https://www.coinbase.com/borrow (last visited Nov. 22, 2022); Coinbase Card, https://www.coinbase.com/card (last visited Nov. 22, 2022); and Coinbase Wallet https://www.coinbase.com/wallet (last visited Nov. 22, 2022), products discussed in the Motion. However, nowhere does the RFPA state, as the CFTC contends, that a business must

---

[1] Again, and as Mr. Emer offered in the Motion (see Mot. at 8), to the extent Mr. Emer himself is a target of the investigation, the Court can learn that fact *in camera*.

3

generate a substantial portion of its revenues from offering financial products in order to qualify as a "financial institution" under the RFPA, nor does the CFTC cite any such authority. Rather, the CFTC relies on an inapt construction of Seventh Circuit authority and ignores the fact that the actual business offerings provided by Coinbase brings it directly within the definition of a "financial institution" discussed by the Seventh Circuit authority the CFTC relies upon.

As discussed in the Motion, the RFPA provides that a "financial institution" is "any office of a bank, savings bank, card issuer as defined in section 1602(n) of Title 15, industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution." 12 U.S.C.A. § 3401. The CFTC misconstrues *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 551 (7th Cir. 2013) ("*Worth*") for the proposition that Coinbase does not qualify as a financial institution. In that case, the Seventh Circuit determined that a precious metals dealer was not a "financial institution" because its provision of financing to its customers was "merely a means to an end, the real or primary goal of the transaction being the sale of precious metals." *Id.* at 551. But, the facts encountered regarding the precious metals dealer in *Worth* are highly distinguishable from the financial products offered by Coinbase encountered here. For example, unlike the underlying loans encountered in *Worth*, which were merely offered to facilitate consumer purchases of precious metals, Coinbase's borrowing product exists specifically to allow customers to "[b]orrow ***cash*** using Bitcoin as collateral." https://www.coinbase.com/borrow; *see also id.* ("Now you can borrow up to $1,000,000 from Coinbase using your Bitcoin as collateral. Pay just 8.7% APR2 with no credit check."). Indeed, in *Worth*, the Seventh Circuit expressly held that "entities [which] exist[] to provide financing and ***cash loans*** to the general public" qualify as "consumer finance institutions" within the meaning of the RFPA." 717 F.3d at 551 (emphasis

4

added). As such, Coinbase's "Borrow" product alone directly qualifies it as a "financial institution" under the reasoning from *Worth*.

Likely because it understands that Coinbase's "Borrow" offering brings it within the Seventh Circuit's definition of a "financial institution" discussed in *Worth* based on its offering of cash loans to its customers, the CFTC does not discuss that fact in its Opposition. Rather, the CFTC spends the majority of its briefing attempting to show that Coinbase Borrow does not account for the majority of Coinbase's overall revenue. However, nowhere in the RFPA does it state that a "financial institution" must generate a majority of its revenue from offering a lending product to be subject to the requirements of the act. Further, unlike the *dicta* regarding Ford Motor Company cited by the CFTC in *F.T.C. v. Sterling Precious Metals, LLC*, No. 12-80597-CIV, 2013 WL 1442180, at *4 (S.D. Fla. Apr. 9, 2013), in which the court agreed that Ford's provision of consumer loans likely "comes within the ambit of a broad definition of [a] 'consumer finance company,'" the Coinbase Borrow product is not an incidental loan offered to facilitate the purchase of a consumer product, but rather is a cash loan allowing consumers to obtain cash in exchange for bitcoin such that Coinbase characterizes the transactions as "fixed term loans." https://www.coinbase.com/borrow. As such, the CFTC' attempt to erect an artificial hurdle to qualification as a "financial institution" under the RFPA is found nowhere in the statutory text and should not be countenanced.

Moreover, the CFTC's contention that the Coinbase Wallet product does not bring Coinbase within the definition of a "financial institution" is also misplaced. Specifically, the CFTC contends that because the Coinbase Wallet is unrelated to financing and rather "is like a high-tech safe deposit box," it does not qualify Coinbase for treatment as a "financial institution." Opp. at 9n.5. However, even assuming, *arguendo*, that CFTC is correct that the Coinbase Wallet

5

product does not implicate lending or financing, its concession that this product allows consumers to store funds on the platform supports, rather than refutes, that Coinbase's Wallet product qualifies it as a "financial institution." Indeed, the RFPA provides that "banks" and "savings banks," each of which allow consumers to store their money in accounts and engage in financial transactions using those funds, qualify for treatment as "financial institutions" under the RFPA. Here, Coinbase Wallet operates no differently than a bank account or savings account by allowing consumers to store funds in an online account, or wallet, and to conduct transactions with those funds. As such, under the doctrine of "noscitur a sociis," upon which the CFTC relies in its Opposition, the similarity of the Coinbase Wallet product to a "bank" account or "savings bank" account, which the RFPA includes in the definition of a "financial institution," supports a finding that Coinbase is a "financial institution" within the meaning of the RFPA. *CFTC v. Worth Bullion Grp., Inc.*, 2012 WL 4097725, at *1 (N.D. Ill. Sept. 17, 2012). Moreover, the fact that the Coinbase Wallet product functions like a bank account is especially salient here because the CFTC's administrative subpoena will no doubt seek to access transactions made by Mr. Emer through his Coinbase Wallet. This is essentially no different than the CFTC attempting to access information from an account held by Mr. Emer at a traditional bank or savings bank.

As such, the CFTC's Opposition fails to refute that Coinbase qualifies as a "financial institution" under the RFPA. The CFTC's failure to provide Mr. Emer with requisite notice in compliance with the RFPA, thus, prevents enforcement of the subpoena.

### III. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court quash the CFTC Subpoena or, in the alternative, issue a protective order narrowing its scope.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 23, 2022 | **VENABLE LLP** |
|  | /s/ *Xochitl S. Strohbehn* |
|  | Abby M. Neu<br>VENABLE LLP<br>227 West Monroe Street, Suite 1900<br>Chicago, IL 60606<br>(312) 820-3400<br>AMNeu@Venable.com |
|  | - AND - |
|  | Ryan M. Lapine (admitted *pro hac vice*)<br>2049 Century Park East, Suite 2300 Los Angeles, CA 90067<br>Telephone: (310) 229-9654<br>Email: RMLapine@Venable.com |
|  | - AND - |
|  | Xochitl S. Strohbehn (admitted *pro hac vice*)<br>1270 Avenue of the Americas, 24th Floor<br>New York, NY 10104<br>Telephone: (212) 307-5500<br>Email: xochitl.strohbehn@venable.com |
|  | *Counsel for Plaintiff Eric Emer* |

7