IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: SUBPOENA TO COINBASE GLOBAL, INC. | |
| ERIC EMER, | No. 22-cv-06570 |
| Movant, | Judge John F. Kness |
| v. | |
| COMMODITY FUTURES TRADING COMMISSION, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eric Emer moves to quash an administrative subpoena ("the Subpoena") issued by the Commodities Futures Trading Commission ("CFTC"), that seeks information relating to Emer's personal account with Coinbase Global, Inc. ("Coinbase"). Emer also seeks the alternative relief of a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. Emer argues the Court should quash the subpoena, or impose a protective order, because the CFTC did not adhere to the requirements of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq*.

It is undisputed that the CFTC did not comply with the RFPA's notice requirements. At issue, rather, is whether the notice requirement of the RFPA § 3401(1) even applies to Coinbase, which is a digital asset trading platform. Emer contends that, because Coinbase offers digital wallets, credit cards, and lending services to its clients, Coinbase is a "savings bank," a "card issuer," or a "consumer finance institution," and therefore is a "financial institution" to which the protections

of the RFPA apply. (Dkt. 1 at 7.) In contrast, the CFTC contends that none of these designations under the RFPA applies to Coinbase.

For the reasons that follow, the Court holds that Coinbase is not a "financial institution" under 12 U.S.C. § 3401(1). CFTC, therefore, was not required to comply with RFPA notice requirements, and Emer may not challenge the Subpoena on that ground. Accordingly, the motion to quash is denied.

I.  BACKGROUND

Coinbase is a secure online platform for buying, selling, transferring, and storing cryptocurrency ("crypto" or "digital currency").[1] Digital currencies are decentralized, meaning they are not held in any bank or other institution; rather, digital currencies are distributed across a network of computers via a facility called a blockchain.[2] When an individual buys crypto, they are issued a public key, which works like an email address, and a private key, which is typically a string of letters and numbers. *Id.* This private key acts as a password allowing the purchaser to access the crypto stored on the blockchain. *Id.* Crypto blockchains are open, meaning all public key and transaction information is available for anyone to see, but they are also anonymous because a holder need not provide a name, address, or any other information to transact with the crypto. *Id.* A holder need only provide the private key. *Id.*

---

[1] *See What is Coinbase?*, COINBASE, https://help.coinbase.com/en/coinbase/getting-started/crypto-education/what-is-coinbase (last visited March 18, 2025).

[2] *See What is a Private Key?,* COINBASE, https://www.coinbase.com/learn/crypto-basics/what-is-a-private-key (last visited March 18, 2025).

Crypto wallets store the private keys to the crypto and are identified by a digital address.[3] There are primarily three types of crypto wallets: hosted wallets, noncustodial wallets, and hardware wallets. *Id.* Coinbase offers only hosted or noncustodial wallets. *Id.* A hosted wallet is a wallet managed by a third party, like Coinbase, that stores the crypto holder's private keys, similar to how a bank keeps customers' fiat currency in a checking or savings account. *Id.* Coinbase provides hosted wallets for its general users to buy, sell, send, and receive crypto because hosted wallets help facilitate the purchase of crypto using traditional currencies. *Id.* A noncustodial, or "self-custody," wallet (like Coinbase Wallet) does not, unlike hosted wallets, rely on a third-party custodian. *Id.* Rather, the crypto holder stores the private key, giving that user full control of the security of the crypto and access to advanced crypto activities like yield farming,[4] staking, lending, borrowing, and more. *Id.* Unlike a hosted wallet, the user need not share any personal information to create a noncustodial wallet. *Id.* A hardware wallet, finally, is a physical device that stores private keys offline. *Id.*

Since 2013, Emer has held the Coinbase Account and used it to transact in digital currencies for both personal and professional purposes. (Dkt. 1 at 2; Dkt. 3 ¶¶ 2, 3, 7.) Those transactions included making purchases from other parties, executing trades for his personal benefit, and depositing proceeds from investments

---

[3] *See How to Set up Crypto Wallet?,* COINBASE, https://www.coinbase.com/learn/tips-and-tutorials/how-to-set-up-a-crypto-wallet (last visited March 18, 2025).

[4] Yield farming is the practice of seeking a financial return by lending out cryptocurrency via decentralized finance protocols, rather than leaving it in a wallet. *See What is Yield Farming? Beginner's Guide,* DECRYPT, https://decrypt.co/resources/what-is-yield-farming-beginners-guide (last visited March, 18, 2025).

made in cryptocurrency funds. (*Id.* ¶ 3.) It is unclear whether the Coinbase Account Emer owns refers to a hosted wallet through Coinbase's general services, a noncustodial wallet through Coinbase Wallet, or both.

As part of an unspecified investigation, the CFTC issued the Subpoena seeking, at least in part, information related to, and account transaction activity from, the Coinbase Account. (Dkt. 3-1.) Because of this, the scope of the Subpoena is unknown. CFTC investigations are confidential, and staff may not disclose information that would separately disclose the market conditions, business transactions, trade secrets, or names of customers of any person related to the investigation except in certain limited circumstances. 17 C.F.R. § 11.3 (2021).

## II. DISCUSSION

Under the RFPA, "government authorit[ies]" are generally prohibited from seeking certain "financial record[s]" from "financial institution[s]" without first notifying certain categories of "customer[s]" and allowing them to object. 12 U.S.C. § 3402. Government authorities, like the CFTC, may obtain financial records through several means under the RFPA, including administrative subpoenas. 12 U.S.C. § 3405. But these administrative subpoenas may only be used to obtain records from a "financial institution" where: "(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; and (2) a copy of the subpoena or summons has been served upon the customer . . . ." 12 U.S.C. § 3405. If an administrative subpoena does not implicate the RFPA, *e.g.*, by seeking records from an entity other than a "financial institution," then the government authority has no obligation to provide notice to the customer. *See SEC v. O'Brien*, 467 U.S. 735, 749–

4

50 (1984) (noting "[t]he most salient feature of the [RFPA] is the narrow scope of the entitlements it creates.").

Under the RFPA, the CFTC is considered a government authority. *See* 12 U.S.C. § 3401(3). If Coinbase is a financial institution, defined by the RFPA as "any office of a bank, savings bank, card issuer . . . or consumer finance institution," 12 U.S.C. § 3401(1), then Emer is its customer, as that includes any person "who utilized or is utilizing any service of a financial institution . . . ." 12 U.S.C. § 3401(5). And if Coinbase is a financial institution, the CFTC would be bound, as a government authority, to provide customers like Emer with notice before obtaining records from Coinbase via administrative subpoena.

The CFTC did not notify Emer of the Subpoena. (Dkt. 3 ¶ 9.) As explained below, however, Coinbase is not a "financial institution" as defined by the RFPA. This is so because it is not a "bank," "savings bank," "card issuer," or "consumer finance institution." Accordingly, the RFPA does not apply to Coinbase, and Emer is not entitled to bring a customer challenge to the Subpoena.

A. *Coinbase is Not a "Bank" or "Savings Bank."*

In his supplemental briefing, Emer argues that Coinbase qualifies as either a "bank" or "savings bank" covered by the RFPA because it provides its customers with a kind of savings account known as a "digital wallet." (Dkt. 22 at 1.) Emer refers to Coinbase's noncustodial wallet, called the Coinbase Wallet, which he contends acts as a "digital wallet" where consumers can "hold digital currency just as they can hold fiat currency in analogous savings accounts . . . ." (*Id.* at 1, 3.) Just as the RFPA

5

applies to traditional savings accounts at banks, Emer suggests it also applies to digital and fiat "savings accounts" like the Coinbase wallet. (*Id.* at 1.)

According to Emer, Coinbase offers services "that are no different in form from those offered by 'traditional' banks." (*Id.* at 3.) Emer asserts that "Coinbase provides savings accounts known as digital wallets to its consumers (like foreign banking institutions offer accounts denominated in foreign currency rather than U.S. dollars)." (*Id.*) Emer says the only difference is that, although traditional bank accounts hold fiat currency, Coinbase accounts hold digital currency. (*Id.*) Emer offers no additional evidence or argument that Coinbase Wallet is a savings account; that Coinbase is a "bank" or "savings bank"; or that crypto wallets are, or should be treated as, savings accounts.

Coinbase's own characterization of Coinbase Wallet shows that Emer has oversimplified the issue: "[U]nlike a normal wallet, which can hold actual cash, crypto wallets technically don't store your crypto. Your holdings live on the blockchain but can only be accessed using a private key."[5] Crypto wallets "keep your private keys—the passwords that give you access to your cryptocurrencies." (*Id.*) Coinbase Wallet is "a self-custody crypto wallet" that, in addition to supporting crypto currencies, also supports decentralized apps and NFTs.[6] These descriptions make clear that the Coinbase wallet is much different in form from the services offered by traditional fiat currency savings accounts.

---

[5] *See What Is a Crypto Wallet*, COINBASE, https://www.coinbase.com/learn/crypto-basics/what-is-a-crypto-wallet (last visited August 26, 2024).

[6] *See Wallet*, COINBASE, https://www.coinbase.com/wallet (last visited August 26, 2024).

Even accepting Emer's characterization of crypto wallets as savings accounts, offering a crypto wallet does not transform Coinbase or Coinbase Wallet into a "bank" or "savings bank" covered by the RFPA. Generally speaking, a bank is "a quasi-public institution . . . created to subserve public ends, or a financial institution regulated by law. . . . A bank is wholly a creature of statute doing business by legislative grace. . . ." 1A *Michie on Banks and Banking* § 2, at 5–6 (1993); *see also* BANK, Black's Law Dictionary (11th ed. 2019) ("a financial establishment . . . organized in accordance with state or federal law; esp., a member of the Federal Reserve System"); 26 U.S.C § 581 (definition of a "bank" under Internal Revenue Code); 12 U.S.C. § 1813(a)(1) (definition of a "bank" under Federal Deposit Insurance Corporation); 18 U.S.C. § 2113(f) (definition of "bank" under federal bank robbery statute). Coinbase is not a bank under any of these definitions: it is neither a national bank nor chartered or registered in any state as a bank. (Dkt. 21-1, Ex. B; C; D.)

Even Coinbase does not consider itself a bank: as it states in its user agreement, Coinbase is "not an FDIC-insured bank." (Coinbase User Agreement § 2.8.).[7] Coinbase is instead a money services business registered with the United States Treasury's Financial Crimes Enforcement Network. (Dkt. 21-1, Ex. A.) Banks are specifically excluded from the designation "money services business." 31 C.F.R. § 1010.100(ff)(8)(i). That Coinbase offers lending services or quasi savings accounts does not change this designation or make it a bank. (Dkt. 22 at 5, n.2.) As such, Coinbase does not qualify as a "bank" or "savings bank" under the RFPA.

---

[7] *See United States User Agreement*, COINBASE, www.coinbase.com/legal/user_agreement/united_states (last visited August 26, 2024).

7

### B.   *Coinbase is Not a "Card Issuer."*

Coinbase offers a product called the "Coinbase Card," which Emer theorizes makes it a "card issuer" and thus a "financial institution" under the RFPA. But the Coinbase Card is not a credit card, nor does Coinbase issue it. A "credit card" is any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services *on credit*. 15 U.S.C. § 1602(l). The Coinbase Card does not extend users credit. Rather, it is "a prepaid card, which allows [the user] to access funds loaded to [their] Card account." (Dkt. 13-2, Ex. C § 1.) As the Coinbase Card Cardholder Agreement makes clear, the Coinbase Card "is not a credit card." (*Id.*)

Not only is the Coinbase Card not a credit card, Coinbase also does not issue the card. A "card issuer" is any person who issues a credit card, or the agent of such person with respect to such card. 15 U.S.C. § 1602(o). According to Coinbase's user agreement, the Coinbase Card is "issued by" a third-party, Pathward National Association ("Pathward"). (Dkt. 13-2, Ex. C.) Pathward is a subsidiary of Pathward Financial, Inc., which is a publicly traded company unaffiliated with Coinbase.[8] (*Id.*) Emer offers no evidence that an agency relationship exists between Coinbase and Pathward.

Because the Coinbase Card is not a credit card, and Coinbase does not issue it, Coinbase is not a "card issuer" under the RFPA

---

[8] *See Corporate Overview*, PATHWARD FINANCIAL, INC., https://pathwardfinancial.com/overview/default.aspx (last visited August 26, 2024).

### C. *Coinbase is Not a "Consumer Finance Institution."*

Coinbase offers lending services through its Coinbase Borrow service. Coinbase allows customers from 23 states to borrow up to $1,000,000 at 8.7% APR from Coinbase using the customer's Bitcoin as collateral.[9] Emer contends that, although providing financing is "admittedly" not Coinbase's primary purpose, Coinbase "would appear to also qualify as a 'financial institution' under the RFPA because it generally provides credit cards and consumer lending services that comprise a *substantial* amount of its revenue." (Dkt. 1 at 6) (emphasis in original). But Coinbase is primarily a trading platform that provides ancillary products, including custodial digital asset wallets (*i.e.*, Coinbase Wallet), debit-like cards (*i.e.*, Coinbase Card), and collateralized lending services (*i.e.*, Coinbase Borrow). Offering these products and services does not qualify Coinbase as a "consumer finance institution" under 12 U.S.C. § 3401(1).

In general, entities that exist "to provide financing and cash loans to the general public" qualify as "consumer finance institutions" within the meaning of the RFPA. *CFTC v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 551 (7th Cir. 2013) (consumer financial institutions are, at a minimum, companies that extend loans to customers). Only institutions whose "defining characteristic" is "the provision of financing" qualify as consumer finance institutions. *Id.* Congress did not intend for the term "consumer finance institution" to include "every retailer that extends financing to a percentage of its customers as part of its business." *Id.*

---

[9] *See Borrowing*, COINBASE, www.coinbase.com/borrow (last visited March 18, 2025).

Coinbase's defining characteristic is the facilitation of digital asset transactions between market participants, not the provision of financing: Coinbase "generate[s] substantially all of [its] total revenue from transaction fees on [its] platform in connection with the purchase, sale, and trading of crypto." (Dkt. 13-2, Ex. E at 22.) Because transaction fees account for substantially all of Coinbase's revenue and any lending or credit activity is separate from Coinbase's core trading platform functionality, lending activities are not Coinbase's defining characteristic. Coinbase, therefore, is not a consumer finance institution under Section 3401(1).

This conclusion comports with a contextual reading of "financial institution" under 12 U.S.C. § 3401(1) and the RFPA more broadly. *CFTC v. Worth Bullion Grp., Inc.*, 2012 WL 4097725, at *1 (N.D. Ill. Sept. 17, 2012), *aff'd sub nom. CFTC v. Worth Bullion Grp., Inc.*, 717 F.3d 545 (7th Cir. 2013) (applying *noscitur a sociis* canon of statutory construction). The categories of market participants that precede "consumer finance institution" in 12 U.S.C. § 3401(1)'s definition of "financial institution" share a common trait: they are "more traditionally and more consistently associated with the provision of financing." *Id.* Coinbase's business, in contrast, is only tangentially associated with the provision of financing.

Construing the RFPA further supports this conclusion. Multiple RFPA sections include an expanded definition of "financial institution" reflecting congressional intent to have different requirements apply to different categories of market participants in different contexts. Those expanded definitions of "financial institutions" confirm that a narrower reading is appropriate here. *Compare* 12 U.S.C. § 3414, *with* 31 U.S.C. § 5312. Adopting Emer's reading of 12 U.S.C. § 3401(1) would

10

improperly expand Section 3401(1)'s definition of "consumer finance institution" to include any entity that engages in any kind of lending or credit activities. *See O'Brien*, 467 U.S. at, 749–50 ("The most salient feature of the [RFPA] is the narrow scope of the entitlements it creates.").

Coinbase does not qualify as a "consumer finance institution" under Section 3401(1) because its "defining characteristic" is not "the provision of financing." On the contrary, Coinbase is a centralized digital asset trading platform that primarily facilitates digital currency trading activity, and only tangentially offers collateralized loans to a limited number of its customers. It does not exist to provide financing to the public at large.

D. *The Federal Rules of Civil Procedure Do Not Apply.*

Emer moved to quash the Subpoena under Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure and moved in the alternative for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure "that: (a) narrows the scope of the subpoena to a period starting on or after August 1, 2019; and (b) limits its scope to materials reasonably pertinent to any investigation the CFTC may be undertaking." (Dkt. 1 at 1.) Emer concedes in his supplemental brief, however, that he has no rights under the Federal Rules of Civil Procedure to challenge the Subpoena. (Dkt. 22 at 2.)

As explained above, the Subpoena is an administrative subpoena issued in accordance with the Commodity Exchange Act and the CFTC's Regulations. *See* 7 U.S.C. § 9(5); 17 C.F.R. § 11.1 et seq. (2013). Rule 26(c) (pertaining to protective orders in pending civil actions) and Rule 45 (pertaining to discovery subpoenas issued in pending civil actions) are thus inapplicable. *See, e.g., Nat'l Credit Union Admin. v.*

*Beacon Cmty. Fed. Credit Union*, 502 F. Supp. 182, 184 (N.D. Ill. 1980) ("The Federal Rules of Civil Procedure do not restrict or control an administrative subpoena") (citing *Bowles v. Bay of New York Coal & Supply Corp.*, 152 F.2d 330, 331 (2nd Cir. 1945); *F. T. C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980)). This conclusion is supported by the advisory committee notes to Rule 45. *See* Fed. R. Civ. P. 45, 1937 Advisory Comm. Note (Rule 45 applies to subpoenas issued by the district courts and "does not apply to the enforcement of subpoenas issued by administrative officers and commissions pursuant to statutory authority.") Accordingly, the Federal Rules of Civil Procedure do not provide a mechanism to quash the Subpoena or limit its scope.

### E. Policy Considerations

Since the RFPA was last amended in 2010, the use of digital currency, and the number of institutions like Coinbase that provide account services for those currencies, have both grown significantly. (*See* PL 111-203, July 21, 2010, 124 Stat 1376). Emer argues that the Coinbase Account is, or should be treated as, a savings account subject to RFPA protections. Emer maintains that treating Coinbase accounts as outside the purview of the RFPA is at odds with the legislative intent underlying the RFPA and could have potentially severe policy implications. As Emer points out, no authority concludes that the RFPA applies only to savings accounts that hold fiat currency, not to accounts holding digital currency. Whether the RFPA applies, or should apply, to digital currency platforms like Coinbase is, therefore, a novel question.

Congress enacted the RFPA in response to *United States v. Miller*, 425 U.S. 435 (1976), to protect the privacy of personal financial data, including data related to

12

savings accounts. *See, e.g., United States v. Sikutwa*, 2016 U.S. Dist. LEXIS 162134, *2 (D. Idaho Nov. 22, 2016) (quashing subpoena for personal financial records from bank accounts). Specifically, the RFPA expanded protections for private citizens to preserve their privacy against government access to their financial records without notice. *See, e.g., Hunt v. SEC*, 520 F. Supp. 580 (N.D. Tex. 1981) ("The basic thrust of the Act is that customers of financial institutions are entitled to notice of any government request for their financial records and an opportunity to challenge the request.")

Coinbase account information would contain much the same information as would account information from a savings account held at a traditional bank, including account balances, transactions, and purchases. As a result, Emer argues, holding the RFPA inapplicable to digital asset accounts is at odds with the legislative intent underlying the RFPA to expand protections for consumers from government intrusion into their private finances. Emer also suggests that any finding that the RFPA does not apply to digital asset accounts would strip consumers of privacy rights in their digital/blockchain assets and account information and prevent companies that allow consumers to store digital/blockchain assets on their platforms from protecting their consumers' private financial information. (Dkt. 22 at 6–7.)

Although the policy principles behind the RFPA may, as Emer argues, call for it to be applied here, its plain language does not. *See Manning v. United States*, 546 F.3d 430, 433 (7th Cir. 2008) ("Courts must apply a statute as written when the language is plain and unambiguous."). Following that plain language, the RFPA's notice requirement does not apply because Coinbase is not a "financial institution."

13

Emer's policy considerations, as well-taken as they may be, must be directed to another forum.

### III. CONCLUSION

Coinbase is not a "savings bank," a "card issuer," or a "consumer finance institution," as defined in the RFPA. It therefore does not qualify as a "financial institution" to which the RFPA applies. Accordingly, the RFPA notice requirement did not apply, and Emer has no right to challenge the Subpoena. Emer's motion to quash is therefore denied.

SO ORDERED in No. 22-cv-06570.

Date: March 18, 2025

JOHN F. KNESS
United States District Judge